## METROPOLITAN SECURITIES CO. v. LADD.

### (Circuit Court of Appeals, Second Circuit. July 13, 1909.)

### No. 290.

CONTRACTS (§ 164*)—CONSTRUCTION—CONTEMPORANEOUS CONTRACTS CONSTRUED TOGETHER.

A street railway company leased its entire system and property for a long term. A contract was subsequently made between them by which the lessee agreed to furnish to the lessor $8,000,000 in cash to make certain extensions and pay indebtedness, and the lessor agreed to issue its improvement notes for the same amount to defendant, a security company, with collateral security. By a contemporaneous agreement between the lessee and defendant the latter agreed that it would when required, on reasonable notice, and in any event before January 1, 1909, furnish to the lessee such sums as might be required by it to carry out its agreement with the lessor. A third agreement was made between defendant and a fourth corporation by which defendant was to deliver the notes and security received from the lessor to the other party, which was to supply the $8,000,000, to be raised by a sale of its own obligations, secured by collateral deposited with a trust company, in accordance with a fourth contract between them. The several contracts were fully performed, except that defendant paid over to the lessee only a part of the money, refusing on the lessee's insolvency to pay more. The several corporations, except the trust company, were practically controlled by the same persons, the fourth corporation, which in fact furnished the money owning 96 per cent. of the stock of defendant, and defendant the entire stock of the lessee. *Held,* that all the contracts must be construed together as one, and, so construed, the transaction was not a loan by defendant, but it simply acted as a conduit for the transfer of the securities and payment of the money to the lessee, and that, having received it for the purpose, and the contracts having been fully executed by all other parties, it had no concern with the solvency or insolvency of the lessee, whose receivers were entitled to recover the unpaid part of the money.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 746–748; Dec. Dig. § 164.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by William W. Ladd, as receiver of the New York City Railway Company, against the Metropolitan Securities Company. Judgment for plaintiff, and defendant brings error. Affirmed.

On writ of error to review a judgment entered February 11, 1909, in the Circuit Court for the Southern District of New York in favor of the plaintiff for $5,271,582.54. The action was tried by the court, a jury trial being waived by written stipulation. The court made numerous findings of fact, those numbered 13, 15, 16, 17, 23, 25, 26, and 32 being duly excepted to by the defendant. The defendant also presented numerous proposed special findings which the court declined to adopt, the defendant reserving an exception to the refusal of the court to find those numbered 11, 15, 16, 17, 21, 24, 25, 28, 29, 30, and 33 to 41 inclusive. The defendant also presented 22 proposed con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

clusion's of law which the court declined to affirm, except the one numbered 22, and the defendant reserved an exception to each refusal.

The action was originally brought by Messrs. Joline and Robinson, as receivers of the New York City Railway Company. The present plaintiff was appointed receiver in place of said Joline and Robinson on the 27th day of July, 1908, and was duly substituted as plaintiff by an order of the Circuit Court entered February 10, 1909.

The complaint, after reciting the appointment of the receivers of the New York City Railway Company and the authority to bring this suit, alleges that all the times therein mentioned the defendant, the New York City Railway Company, and the Metropolitan Street Railway Company were New York corporations, and that the latter on the 14th day of February, 1902, was operating as owner, lessee, and by means of subsidiary companies, practically the entire surface street railway system of the city of New York. That on the said 14th day of February, 1902, the Metropolitan Company leased its systems and lines to the New York City Company for the term of 999 years, and the City Company took possession and operated the same under the lease, and continued to do so until the appointment of the receivers by order made September 24, 1907.

The complaint alleges further that on the 22d day of May, 1907, the City Company entered into an agreement with the Metropolitan Company whereby the City Company promised that it would when required, on reasonable notice, and in any event before January 1, 1909, furnish the Metropolitan Company $8,000,000 in cash. The agreement further provided that the Metropolitan Company would forthwith issue and deliver to the Metropolitan Securities Company, the defendant herein, its three-year 5 per cent. improvement notes to the face value of $8,000,000, and for security would assign to the Securities Company all claims, notes, and accounts of every description which the Metropolitan Street Railway Company had at the date of said agreement or thereafter might have against any of its subsidiary companies. That the securities were assigned as provided in said agreement.

It is alleged further that on the same day (May 22d) the City Company entered into an agreement with the Securities Company whereby it agreed that the Securities Company would when required on reasonable notice, and in any event before January 1, 1909, furnish to the City Railway Company such sums as might be required by it to carry out said agreement between the Metropolitan Street Railway Company and the City Company. That this covenant upon the part of the Securities Company formed the consideration for the said agreement on the part of the City Company to make said payments to the Metropolitan Street Railway Company, and induced the making of the agreements to do so. Both of these contracts are in writing, and are set out in full in the opinion of the Circuit Judge, and are known as schedules A and B. They need not be repeated.

The complaint alleges further that the City Company and its receivers fully performed its agreement with the Metropolitan Company, and $8,000,000 has been paid and incurred pursuant to its terms, for which no consideration has been received except the promise of the defendant to repay said sum. That the Metropolitan Company has performed the agreement on its part with the City Company, and has delivered to the defendant prior to September, 1907, the full consideration for the defendant's said agreement to repay the sums paid by the City Company, to wit, the $8,000,000 of improvement notes of the Metropolitan Company, and as collateral thereto the notes of the Third Avenue Railroad Company, Twenty-Eighth and Twenty-Ninth Streets Crosstown Railroad Company, Twenty-Third Street Railroad Company, and Second Avenue Railroad Company, aggregating $8,148,209.91. That the defendant accepted the said notes, and has continued to hold the same for its own use. That the said payments to the Metropolitan Company were made at the instance of the Securities Company, and in reliance upon its agreement to repay the New York City Railway Company for such advances, no other consideration having been received by said City Company. That the Securities Company has paid only the sum of $3,036,000 to the City Company, and there is due a balance of $4,964,000. That the agreements heretofore mentioned were made to enable the Metropolitan Company to discharge a floating indebtedness and

make necessary improvements and changes of motive power necessitating the expenditure of $8,000,000.

Judgment is demanded for $4.964,000.

The answer admits the appointment of receivers of the New York City Railway Company, and that on the 14th of February, 1902, and for some time prior thereto, the Metropolitan Street Railway Company operated a large portion of the street surface railroads in the borough of Manhattan. It admits the execution of schedules A and B, the reception by it of certain papers purporting to be improvement notes of the Metropolitan Street Railway Company for the face amount of $8,000,000, and, as collateral thereto, paper writings purporting to be promissory notes of the companies as alleged in paragraph 7 of the complaint, and it admits the payment of $3,036,000 as therein alleged.

The answer puts in issue the other allegations of the complaint, and as an affirmative defense alleges the insolvency of the New York City Railway Company and of the Metropolitan Street Railway Company.

The opinions of the court below are reported sub nom. Joline v. Metropolitan Securities Co. (C. C.) 164 Fed. 144, 650.

Cravath, Henderson & De Gersdorff (De Lancey Nicoll and Richard Reid Rogers, of counsel), for plaintiff in error.

Joseph H. Choate, Arthur H. Masten, and Robert C. Beatty, for defendant in error.

Before COXE, Circuit Judge, and HOLT and HOUGH, District Judges.

PER CURIAM. It will be observed from an examination of the pleadings that few of the salient facts are disputed. These facts appear in the opinion of the Circuit Judge, and need not be restated. The question before us is one of law, depending largely upon the construction which is placed upon the second paragraph of schedule B. It will, therefore, be unnecessary to consider the defendant's exceptions in detail.

On the 22d day of May, 1907, the day on which schedule B was signed, an agreement between the Metropolitan Company and the City Railway Company was also executed, known as "Schedule A," by which, after reciting that the account between the parties had been stated and approved, it was agreed that "the City Company shall as and when required, on reasonable notice, and in any event before January 1, 1909, furnish the Metropolitan Company eight million dollars in cash."

Schedule A further provided that the Metropolitan Railway Company should forthwith issue to the Metropolitan Securities Company its improvement notes to the face amount of $8,000,000, and for the security of said notes the Railway Company should assign all claims, notes, and accounts "which it now has and in the future may have against any of its subsidiary companies."

So far, then, we have an admitted obligation of the City Company to furnish $8,000,000 to the Metropolitan Company, and an agreement by the latter to issue its improvement notes to that amount with collateral. Schedule B recites the making of schedule A, a copy of which is attached thereto. By the second paragraph of schedule B, the Securities Company agreed, on reasonable notice, to furnish to the City Company such sums as were required to carry out the agreement with the Metropolitan Company, viz., to "furnish the Metropolitan

Company eight million dollars in cash." The Securities Company also agreed to advance to the City Company such other sums as may be required by the City Company before January 1, 1909, against the issue of demand notes of the City Company therefor. This sentence, the second of paragraph 2, relates to an entirely separate and distinct obligation in no way connected with the first. No demand notes were issued for "such other sums," and therefore this provision of the agreement was never called into action.

The City Company assigned to the Securities Company all the shares of stock and securities set out in schedule A. On the same day, May 22, 1907, the Securities Company entered into an agreement with the Interborough-Metropolitan Company which recites by way of preamble that the Interborough Company is the owner of more than 96 per cent. of the capital stock of the Securities Company, which latter company is in need of certain moneys for corporate purposes. The agreement provides that the Interborough Company shall advance to the Securities Company prior to July 1, 1909, $15,000,000 in such amounts as the Securities Company may require; the latter agreeing to deliver to the former its demand notes for the said sum and certain other notes and stock as security therefor. On May 23, 1907, the Interborough-Metropolitan Company entered into an agreement with the Mercantile Trust Company whereby the latter agreed to certify as trustee the former's notes to the amount of $15,000,000.

In the endeavor to find a way through this maze of corporations, contracts, and obligations, it is well to remember that the Securities Company owned the entire capital stock of the City Company, that 96 per cent. of the stock of the Metropolitan Securities Company was held by the Interborough-Metropolitan Company, and that all of the railway companies connected with this controversy were controlled, practically, by the same individuals. There may have been a reason for involving the street railway system of New York in such an impenetrable snarl, but it has not been disclosed in the record. The project of operating and financing the street railway systems of New York during all the times in question, though protean in the facility with which it appeared in different forms and under different names, was the same familiar enterprise, and managed, with the exception of the Mercantile Trust Company, by the same group of men. In our opinion, the true view of the obligation between these parties can only be obtained by considering all the traction companies as being merely parts or administrative divisions of one complex concern, and all the separate contracts executed, in relation to obtaining $8,000,000 for the New York City Company, as being one contract, to be construed together. The Metropolitan Street Railway Company had leased all its properties to the New York City Company. The Interborough-Metropolitan Company, through its stock ownership, actually controlled the traction business, and, although the other companies still maintained a distinct corporate existence, and could make obligatory contracts with each other, they were, in fact, merely departments or branches of the business controlled by the Interborough Company. It was clearly the intent of the parties to the May, 1907, agreements to provide a fund for paying the debts of

the Metropolitan Railway Company and for necessary future construction, aggregating about $8,000,000, which sum the Securities Company undertook to furnish to the City Company absolutely and without condition. The language of schedule B in this regard is unambiguous. It provides that "the Securities Company shall * * * furnish to the City Company such sums as may be required by it to carry out" its agreement with the Metropolitan Company to pay $8,000,000.

When the various contracts of May 22 and May 23, 1907, were made, the situation was this: By the provisions of the lease between the Metropolitan Street Railway Company and the New York City Railway Company, whatever money was then needed for expenditures for permanent betterments upon the roads controlled by the Metropolitan Street Railway Company was to be raised by the Metropolitan Street Railway Company, by the issue of its own securities, and was to be furnished to the New York City Railway Company, and expended by it in making the necessary permanent betterments upon the property. The New York City Company had at that time expended over $2,000,-000 of its own money for such betterments, for which it was entitled to reimbursement by the Metropolitan Street Railway Company, and it was proposed to make further similar expenditures for permanent betterments, amounting in the aggregate to $8,000,000. That being the situation, an arrangement was made for obtaining the $8,000,000 by the negotiation or sale of notes to be issued by the Interborough Company, certified by the Mercantile Trust Company, and secured by collateral deposited with the Trust Company. The arrangement made provided for the issue of $15,000,000 of such notes, if desired by the Interborough Company, $8,000,000 of which should be used to provide the $8,000,000 required for betterments by the Street Railway Company. To effect that arrangement four contracts were executed, one between the Metropolitan Street Railway Company and the New York City Company, one between the New York City Company and the Metropolitan Securities Company, one between the Metropolitan Securities Company and the Interborough-Metropolitan Company, and one between the Interborough-Metropolitan Company and the Mercantile Trust Company. These four contracts were made at the same time, were in pari materia, and are to be construed together as constituting, in fact, one contract. The substantial provisions of that contract which bear upon the questions in controversy in this case were that the Metropolitan Street Railway Company agreed to execute its notes for $8,-000,000 payable to the Mercantile Trust Company, and to deliver them to the Metropolitan Securities Company, together with securities or obligations for more than $8,000,000 of various street railway companies whose properties were controlled by the Metropolitan Street Railway Company. Such notes and collateral were then to be delivered by the Metropolitan Securities Company to the Interborough-Metropolitan Company, and then by the Interborough-Metropolitan Company to the Mercantile Trust Company. The Metropolitan Securities Company was to issue its notes to the Interborough Company for $15,000,000, and the Interborough Company was to issue its own notes for $15,000,000, accompanied by the certificates of the Mercantile

Trust Company that such notes were adequately secured by collateral delivered to the Trust Company, by means of which issue of notes of the Interborough Company, secured by the collateral. held by the Mercantile Trust Company as trustee, the actual funds were to be raised. Then it was agreed that the $8,000,000 so obtained should be paid by the Interborough Company to the Securities Company, and that the Securities Company should hold such sum, and pay it to the New York City Company whenever it was called upon for the money, and in any event before January 1, 1909. All this, except the payment of the money to the New York City Company, was done. The Metropolitan Street Railway Company issued its notes for $8,000,000, payable to the Mercantile Trust Company, and delivered them, together with the stipulated collateral security, to the Metropolitan Securities Company. That company immediately transferred them to the Interborough Company. That company immediately transferred them to the Mercantile Trust Company. The Interborough Company immediately paid to the Metropolitan Securities Company $8,000,000, and the Metropolitan Securities Company afterwards paid to the New York City Company, as called on from time to time, over $3,000,000; but after the appointment of the receivers the Securities Company refused to pay over the balance to the New York City Company, on the ground, which is its defense in this case, that the real existing arrangement was that the Metropolitan Securities Company had contracted to loan $8,000,000 to the New York City Company, and that the insolvency of the New York City Company released the Metropolitan Securities· Company from the obligation to make further advances upon the loan. We do not think it strictly correct to say that the delivery of the notes and securities by the Metropolitan Street Railway Company to the Metropolitan Securities Company was a sale, although the transaction had many of the features of a sale. The Metropolitan Securities Company was nothing but an agent or conduit for the delivery of the notes and securities from the Metropolitan Street Railway Company to the Interborough Company, and for the transmission of the money received from the Interborough Company to the New York City Company. The Metropolitan Securities Company had no real interest in the notes or the collateral when it received· them from the Metropolitan Street Railway Company. It had no right to retain them, or to use them for any purpose, and, in fact, there was no reason that we can see for going through the roundabout form of delivering them to the Metropolitan Securities Company at all. It would have been more to the point to have delivered them directly to the Interborough Company, or, still more directly, to the Mercantile Trust Company. So when the money was provided by the Interborough Company, there was no reason for going through the form of turning it over to the Metropolitan Securities Company. It might just as well have been paid directly to the New York City Company.

The obligation of the Metropolitan Securities Company, after it received the $8,000,000 from the Interborough Company, to pay it to the New York City Company, may, of course, be considered as a simple obligation under the contract between them. We think it may more properly be described as a contract obligation, fully executed

by one party, and upon which nothing remained to be done by the other but to pay over the money; or it may be regarded as the obligation of a mere depositary, or bailee, to turn over money which is held upon an express agreement to pay it to another, a proper action to recover which would be an action for money had and received.

But whatever would be an accurate description of the strict legal nature of the obligation between the Metropolitan Securities Company and the New York City Company, one thing seems absolutely clear, and that is that it was not a contract of loan. Nothing in the case indicates that the Metropolitan Securities Company was loaning the money to the New York City Company. No promise to repay was executed, no evidence of the loan was delivered, no time of repayment was fixed, no rate of interest was agreed upon, and none of the ordinary indicia of a loan, particularly a loan of such magnitude as $8,-000,000, exists. But much weightier than the fact that all the ordinary evidences of a loan are wanting is the fact, shown by all the evidence and all the circumstances of the case, that nobody imagined at the time that the transaction was a loan, or had any analogy to a loan. The Metropolitan Street Railway Company had furnished the securities upon which the money was to be raised. They were in the shape of negotiable securities. They had been transferred for value, before maturity, to innocent purchasers in good faith, and no defense could be interposed to them. The money had been raised and deposited with the Metropolitan Securities Company, subject to the call of the New York City Company. It was just as though that amount had been deposited in a bank, subject to the checks of the New York City Company. It was intended to be expended in permanent betterments of the property of the street railway company, to provide for which the street railway company had parted with its securities for a like amount. The suggestion made now that this was a loan, that the New York City Company supposed, or that any of the parties concerned imagined, that the New York City Company, after it expended that $8,000,000, was at some future time to repay it in cash to the Metropolitan Securities Company, seems to us absolutely untenable.

There is no element of a loan about such a transaction; it was a simple promise to furnish the City Company $8,000,000. Suppose there had been a tripartite agreement between the Metropolitan, City, and Securities Companies providing that the City Company should pay the Metropolitan Company $8,000,000 and that the Securities Company should furnish the money to enable the City Company to make the payment—all upon sufficient consideration; in such circumstances, can there be a doubt as to the liability of the Securities Company? The balance which it is asked to pay over does not come out of its treasury; it had already received the amount, or security therefor. As before stated, the transaction by which the Metropolitan Company was to be supplied with $8,000,000 by the City Company was pursuant to a general plan as evidenced by agreements of May 22 and 23, 1907.

In consideration of the issue and delivery to the Securities Company by the Metropolitan Company of its improvement notes for the face amount of $8,000,000, the City Company agreed to furnish the Metropolitan Company $8,000,000 in cash, which the Securities Com-

pany promised to furnish to the City Company by a contemporaneous agreement.

Great weight is placed by the counsel for the Securities Company on what is called the "hypothecation clause" in the contract between the Metropolitan Street Railway Company and the New York City Railway Company. That contract provides for the delivery of the notes for $8,000,000 and of the collateral by the Metropolitan Street Railway Company to the Metropolitan Securities Company, and the hypothecation clause provides that the Securities Company shall have the right to pledge and hypothecate the notes and the collateral, and it is argued that this showed that the agreement between the New York City Company and the Metropolitan Securities Company was a contract for a loan, and not for a sale. But, in our opinion, the explanation of the insertion of this hypothecation clause in the contract is very simple. Strictly, it was unnecessary. The Metropolitan Securities Company, of course, had the right to transfer the notes and collateral to the Interborough Company, and the latter company, of course, had the right to hypothecate them as security with the Mercantile Trust Company. That was what they were made for, as fully appears in the recitals in the contracts. But so complicated had become the relations of these various traction companies, and their rights and liabilities as between each other, and so involved were the rights created by the four contracts executed between the various companies, forming the chain of this transaction, that ordinary business men, like the officers of the Mercantile Trust Company, or, indeed, their counsel, if the matter had been referred to counsel, would have had to make the same laborious examination of all the details of these contracts, and of the relations between the parties, which it has been necessary for the court to make in order to understand the comparatively simple question involved in this case. Under those circumstances, it was not improbable that the question might arise whether the Metropolitan Securities Company, or the Interborough Company, or both, had, in fact, the power to hypothecate the notes of the Metropolitan Street Railway Company, and the securities accompanying them. That being so, it was a matter of practical common sense to put a specific clause in the contract showing unmistakably that such a right existed, and accordingly there was inserted in the contract between the Metropolitan Street Railway Company and the Metropolitan Securities Company, and in the contract between the Metropolitan Securities Company and the International Company, a specific provision to the effect that each of those companies had that right of hypothecation. Such a provision did not create the right, but if afforded clear evidence that the right existed, and prevented the necessity of an elaborate investigation to discover whether there were any possible grounds on the part of anybody to deny that such a right existed. Such provisions are often put into contracts, and the fact that a contract contains such a provision is not necessarily of much weight in construing the meaning of the contract.

It is not necessary, in order to sustain the judgment, to hold that the notes were actually sold to the Securities Company, in view of the fact that the company received them for the express purpose of rais-

ing money on them pursuant to a general scheme which contemplated a definite agreement on the part of the Securities Company to supply the City Company with funds wherewith to fulfill its absolute obligation to the Metropolitan Company. The Metropolitan Company issued and delivered the notes, not in consideration of a promise from any one to hypothecate or sell them, but in consideration of a valid agreement to pay it $8,000,000 if delivery were made to the Securities Company. Although there may be a difference of opinion as to the technical name applicable to the transaction, we are unanimous in thinking that the liability of the defendant is fully established and that the question of nomenclature is negligible.

We concur with the Circuit Judge in his reasoning and conclusions as to the other questions discussed by him. If we are correct in our construction of the agreements, it is, of course, no defense that the party entitled to receive the money subsequently became insolvent.

The judgment is affirmed, with costs.