UNITED STATES, to Use of J. B. VAN SCIVER CO., v. UNITED STATES FIDELITY & GUARANTY CO. et al.

(Circuit Court, E. D. Pennsylvania. March 12, 1910.)

No. 730.

1. UNITED STATES (§ 67*) — CONTRACTS FOR PUBLIC WORKS — CONTRACTOR'S BOND—ACTIONS—LIMITATIONS—STATUTES.

Where a federal contract had been fully completed several months prior to the adoption of Act Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1909, p. 948), amending Act Aug. 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901, p. 2523), the one-year limitation prescribed by such amendment was inapplicable to an action by a materialman against the contractor's surety.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*]

2. PRINCIPAL AND SURETY (§ 104*)—CONTRACTOR'S BOND—PAID SURETY.

The rule of strictissimi juris, ordinarily applied in relief of an individual voluntary surety, is inapplicable to relieve a paid surety on a contractor's bond because of an extension of time to the principal; but such surety must show, in addition, actual injury.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 186; Dec. Dig. § 104.*]

3. PRINCIPAL AND SURETY (§ 105*)—PAID SURETY—DISCHARGE—EXTENSION OF TIME TO PRINCIPAL.

Since there is no presumption that a paid surety was injured by an extension of time to the principal, the fact that a materialman accepted the principal's note for four months was insufficient to discharge the surety, whether the extension of time was valid or not, in the absence of allegation and proof of prejudice to the surety in fact.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 191; Dec. Dig. § 105.*]

4. COMMERCE (§ 46*)—INTERSTATE COMMERCE—SUBJECTS OF REGULATION—FOREIGN CORPORATIONS—DOING BUSINESS WITHIN STATE.

Where plaintiff furnished certain furniture, fittings, etc., for certain United States vessels under a subcontract with the contractor, and all of the articles of furniture, etc., were brought from New Jersey into Pennsylvania and delivered in Philadelphia, the transaction constituted interstate commerce as to which Act Pa. 1874 (P. L. 108), requiring a foreign corporation to register before doing business within the state, was inapplicable.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 100; Dec. Dig. § 46.*

Foreign corporations "doing business" in state, see notes to Wagner v. J. & G. Meakin, 33 C. C. A. 585; Ammons v. Brunswick-Balke Collender Co., 72 C. C. A. 622.]

Action by the United States, to the Use of the J. B. Van Sciver Company, against the United States Fidelity & Guaranty Company and another. On rule for judgment for want of a sufficient affidavit of defense. Granted.

Samuel Crowther, Jr., and George Quintard Horwitz, for plaintiff.
R. Stuart Smith and Morgan, Lewis & Bockius, for defendant.

J. B. McPHERSON, District Judge. 1. This suit is brought upon a surety bond that was given to the United States under the act of 1894 (Act Aug. 13, 1894, c. 280, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523]) by a principal contractor (Neafie & Levy Company), and recovery is sought for labor done and materials furnished to the principal by a subcontractor, the J. B. Van Sciver Company. The claim arose in the summer of 1904. The Neafie & Levy Company received full payment from the United States about October 31st of that year, but has not paid any part of the subcontractor's claim. In May, 1909, the Van Sciver Company applied to the War Department for a certified copy of the bond in order to begin suit thereon, and the present action was brought on May 28th. This is the same bond upon which two other, suits by subcontractors have already been brought and determined; one suit being United States, to Use of Griscom-Spencer Co., v. United States Fidelity, etc., Co. (C. C.) 172 Fed. 269, and the other being United States, to Use of Williamson Bros. Co., v. Same (C. C.) 171 Fed. 247. In the last-named case, Judge Lanning decided that the limitation of one year prescribed by the act of 1905 (Act Feb. 24, 1905, c. 778, 33 Stat. 811 [U. S. Comp. St. Supp. 1909, p. 948]), supplemental to the act of 1894, did not apply to the contract between the Neafie & Levy Company and the United States, because it was fully completed several months before the limitation was adopted. Judge Lanning's ruling was approved by the Circuit Court of Appeals in its opinion delivered in the Griscom-Spencer Case, 178 Fed. 692, and I need do no more than refer to that decision as sufficient justification for overruling now the same defense.

2. The second defense requires some further consideration of the Griscom-Spencer suit. The Court of Appeals there held an affidavit by the surety to be insufficient because it merely averred that the creditor had favored the principal debtor without the knowledge or consent of the surety by extending the time wherein the debt might be paid. The creditor had taken the principal's promissory note at three months and had it discounted, and during this period the principal had received from the United States the whole balance due upon his contract, and had shortly thereafter gone into the hands of a receiver. But the surety failed to aver actual injury from the creditor's acts, or that the receivership had been caused by the principal's insolvency; and, accordingly, the Court of Appeals decided that, since a surety company undertakes its obligation, not as a volunteer, but on the footing of a compensated business, the rule of strictissimi juris, which is ordinarily applied in relief of an individual voluntary surety, was not applicable, but that such a company must show actual injury by the creditor's acts before it could claim relief from its obligation on that account. In the present suit the affidavit attempts to set up an extension of time granted by the Van Sciver Company, declaring that about October 28, 1904, the company "accepted the promissory note of the Neafie & Levy Ship & Engine Building Company, dated October 28,

1904, payable four months after date for $4,896." The receivership on October 31st is then averred, and it is added that the Neafie & Levy Company was "at that time insolvent." It is therefore argued that the question is now presented which the Circuit Court of Appeals declined to decide in the Griscom-Spencer Case, namely, the effect of the principal's insolvency during the running of the note; and it is contended that a presumption of injury upon which the surety may rely arises from the bare happening of the debtor's insolvency. But the surety's chief difficulty is, I think, that there was no extension of time in the present case, as will appear from the following paragraph in the statement of claim:

"That no part of the said sum has been received by the said plaintiff corporation, nor has the said plaintiff corporation granted any extension in time of payment to the Neafie & Levy Ship & Engine Building Company, although demand has frequently been made on them to pay, has refused to make any payments, promptly or otherwise, to this plaintiff, which supplied both labor and materials in the prosecution of the work of the said Neafie & Levy Ship & Engine Building Company, in or about the construction of the said hulls as provided for in the said contract between the United States and the Neafie & Levy Ship & Engine Building Company. That upon the 28th day of October, A. D. 1904, the said Neafie & Levy Ship & Engine Building Company did send to the said plaintiff corporation a promissory note in the sum of $4,896.00, payable four months after date. That the said plaintiff corporation did not desire or request the aforesaid promissory note and did refuse to receive the same other than as collateral security, and not in payment or in extension of the aforesaid claim, and did, during the period between the date of the note, that is to say, between October 28, 1904, and February 28, 1905, make frequent demands on the Neafie & Levy Ship & Engine Building Company to pay the account as heretofore stated, and the said Neafie & Levy Company did frequently promise to pay, but did utterly fail so to do. That the aforesaid promissory note was not discounted by the said plaintiff corporation or received by them other than as evidence of indebtedness, and that neither the aforesaid account nor the promissory note has been paid."

The affidavit of defense does not deny, and therefore admits, these averments. It simply sets up that the Van Sciver Company "accepted" the promissory note, and this averment is entirely consistent with the statements that the note was only accepted as collateral, was not taken in payment or in extension of the debt, and was not discounted for the plaintiff's benefit. Since the statement of claim must be accepted as correct in these particulars, there was no extension of time, and the surety's defense upon that ground is not well taken.

But, even if there had been a valid and binding extension, it would still be necessary to inquire whether the surety was injured thereby. The surety does not aver any actual harm, but relies upon the presumption of injury, and argues that the situation is analogous to the forging of a depositor's signature to a check, and his failure to notify the bank promptly upon his discovery of the crime. Counsel contends that in such a case the depositor loses his right of action if he fail to notify the bank promptly, and that "the law assumes—and does not find it necessary to conduct an inquiry to verify the assumption—that, had the notice been given promptly, the bank might have taken steps to protect itself"—citing Trust Company v. Bank, 185 Pa. 586, 40 Atl. 97, and Bank v. Morgan, 117 U. S. 115, 6 Sup. Ct. 657, 29 L. Ed. 811. Whatever the rule may be in the case supposed, it seems to me more

pertinent to refer to the decision of the Supreme Court in Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242, in which not merely an analogous question, but the very question now under consideration (the rights of a surety company under a bond like this), was considered in some of its aspects. The syllabus sufficiently states the decision:

"The taking by a materialman of 30 and 60 day notes for materials supplied to one contracting with the government and who had given the bond of a surety company in pursuance of Act Aug. 13, 1894, 28 Stat. 278, to the effect, among other things, that he would 'promptly make payment to all persons supplying him labor or materials,' will not necessarily relieve the surety company from obligation under the ordinary rule that exonerates a guarantor in case the time fixed for performance of the contract by the principal be extended without his consent, where it does not appear that such extension was unreasonable, or that the surety was prejudiced thereby."

Even if it be true, therefore, that the Van Sciver Company extended the time of payment by "accepting" the four months' note, the question still remains: Is the surety company relieved thereby? Not necessarily —so the Supreme Court has said. It must still appear that the extension was unreasonable, or that the surety was prejudiced thereby. That the extension was unreasonable, I do not agree. Three months was held to be a not unusual time by Judge Holland in the Griscom-Spencer Case; and, understanding the question of reasonable time as it is now presented upon this record to be for the court and not for a jury (Aymar v. Beers, 17 Am. Dec. 544, note; Wiggins v. Burkham, 77 U. S. 129, 19 L. Ed. 884; Cooke v. United States, 91 U. S. 402, 23 L. Ed. 237; Oil Co. v. Van Etten, 107 U. S. 334, 1 Sup. Ct. 178, 27 L. Ed. 319), I hold that a credit of four months, standing alone, is not to be condemned as a matter of law. Under some circumstances, even a briefer credit might be unreasonable; but no such circumstance is averred in the present case.

Neither does it appear in the affidavit that the surety was prejudiced by the extension, assuming an extension to have been given. There is no presumption that the surety company has been harmed. As the Supreme Court has said, the fact of harm must "appear." In other words, facts must be averred from which the inference of injury may fairly be drawn, and it is not enough to suggest mere contingencies or possibilities. It should be remembered, I think, that, when a surety company is called upon to make good a loss under a bond like this, it is only asked to fulfill the obligation which it has undertaken and has been paid for; and it should not be relieved unless it has actually been harmed by the conduct of the parties without its own consent. As I understand the affidavit, it shows no injury and no fact from which injury may fairly be inferred, even if the time of payment was validly extended.

3. A supplemental affidavit has also been filed, in which a third defense is set up, namely, that in doing the work and furnishing the materials upon which the claim is founded the Van Sciver Company was violating the Pennsylvania statute of 1874, which requires a foreign corporation to register before doing business within the state. The Pennsylvania cases construing the statute have been recently collected

and reviewed by the Circuit Court of Appeals in Buffalo Refrigerating Co. v. Penn Heat & Power Co., 178 Fed. 696, and that case may perhaps be referred to for a summary of the Pennsylvania decisions upon a somewhat litigated question. Looking at the facts now presented, however, they seem to present a federal question, upon which the cases in the state court are, of course, not controlling. The relevant part of the supplemental affidavit is as follows:

"The said J. B. Van Sciver Company, both before and after making the agreement aforesaid with the Neafie & Levy Ship & Engine Building Company, was doing business in the commonwealth of Pennsylvania, and is still doing business in the commonwealth of Pennsylvania. The factory and office of the said company at Camden, N. J., is directly connected with the telephone exchanges of the Bell Telephone Company and the Keystone Telephone Company in the city of Philadelphia, Pa., through the private cables of the said J. B. Van Sciver Company. The name of said company is also contained in business directories published in the city of Philadelpia, Pa., at the instance, as deponent is informed and believes, of the officers of said company.

"The agreement entered into by and between said J. B. Van Sciver Company and the Neafie & Levy Ship & Engine Building Company for supplying furniture and furnishings to be placed and for work and labor to be performed on the four vessels mentioned in the plaintiff's statement of claim, designated as Hulls Nos. 976, 977, 978, and 979, was embodied in letters of the J. B. Van Sciver Company and mailed to the Neafie & Levy Ship & Engine Building Company from Camden, N. J., and in a letter of the Neafie & Levy Ship & Engine Building Company mailed to the J. B. Van Sciver Company from Philadelphia, Pa., as set forth in the exhibits attached to the plaintiff's statement.

"The said agreement was to be executed and performed, and was in fact executed and performed, in the state of Pennsylvania.

"All the furniture and furnishings supplied by the J. B. Van Sciver Company for the said four vessels, in pursuance of the said agreement, were delivered at the premises of the Neafie & Levy Ship & Engine Building Company in the city of Philadelphia, Pa., by wagons of the J. B. Van Sciver Company, which crossed the Delaware river from Camden, N. J., to Philadelphia, Pa., by ferry.

"The J. B. Van Sciver Company performed certain work and labor in and upon the said four vessels, in pursuance of the said agreement, in the state of Pennsylvania, to wit, upholstering of seats, placing and installing furniture in position on said vessels, and fastening the same to the floors and partitions in the vessels, laying carpets and linoleum, hanging curtains, attaching curtain rods and sockets, and taking measurements for mattresses, carpets, cushions, and furniture. All of the said work and labor was done and performed by the J. B. Van Sciver Company in and upon the said four vessels while the same were in the state of Pennsylvania and at the premises of the Neafie & Levy Ship & Engine Building Company in the city of Philadelphia. All of said work and labor was done and performed by employés of the J. B. Van Sciver Company, who performed said work and earned their wages therefor in the state of Pennsylvania.

"All of the furniture and furnishings supplied for the said four vessels by the J. B. Van Sciver Company were commodities marketable in Pennsylvania."

To my mind, these paragraphs clearly disclose interstate commerce, and this, of course, could not be prohibited or regulated by the Pennsylvania Legislature. The various articles of furniture were brought across the Delaware river from New Jersey into Pennsylvania and were delivered in the city of Philadelphia. The work of installation was a mere incident to the sale, and should not be separately considered. It is a satisfaction to know that the Pennsylvania court takes

the same view of its own statute, and holds that such acts as are described in the supplemental affidavit constitute interstate commerce, and are not condemned by the act of 1874 (P. L. 108). Mearshon v. Lumber Co., 187 Pa. 12, 40 Atl. 1019, 67 Am. St. Rep. 560.

The rule is made absolute, and the clerk is directed to enter judgment in favor of the plaintiff.