MINNEAPOLIS SYNDICATE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10163.   Promulgated October 30, 1928.

*H. A. Mihills, C. P. A.*, for the petitioner.
*Harold Allen, Esq.*, for the respondent.

1304

OPINION.

TRUSSELL: Upon audit of petitioner's tax return for the year 1917 invested capital as shown by its books in the sum of $1,009,156.93 was reduced by the revenue agent to $451,100.23, resulting in the determination by respondent of $3,216.18 additional income and profits taxes. To this petitioner objected, claiming invested capital in addition to that determined. Upon consideration of this question respondent held that it was impossible to compute petitioner's correct invested capital and accordingly determined its tax liability under section 210 of the Revenue Act of October 3, 1917. This action resulted in the increase of the deficiency from $3,205.78 to $12,084.77.

Upon organization in 1882 petitioner had paid in for stock $540,000 in cash. Later the additional sum of $100,000 in cash was paid in for stock. In 1885 a stock dividend of $60,000 was issued, which was charged against a cash surplus. In addition it is admitted that petitioner's books show a net amount of $195,624.61 in capital expenditures by way of permanent additions and improvements to its building which were erroneously charged to profit and loss. It necessarily follows that petitioner is entitled to adjust by addition of

these amounts the book costs of its building and improvements, these adjustments to be made as of the dates of the several expenditures. *American Seating Co.*, 4 B. T. A. 649; *Rockford Brick & Tile Co.*, 4 B. T. A. 313; *Goodell-Pratt Co.*, 3 B. T. A. 30.

We now come to the transaction effected by the deed and lease of December 27, 1906, and the cash distribution of $250,000 to stockholders by petitioner on January 26, 1907. A determination of petitioner's invested capital is a simple matter of computation when the extent to which it was depleted in these transactions is ascertained.

The theory of respondent, as announced by his counsel at the hearing, is that the sale of the building and lease of the land were transactions separate and distinct; that petitioner sold the building, which on its books represented a cost of $640,000, for $250,000 cash and thereby sustained a loss of $390,000, and its invested capital was accordingly reduced in this amount, and the subsequent distribution of the $250,000 in cash to its stockholders further reduced it by that amount, leaving only that portion represented by the cost of the lot, or $74,500.

However, on examination of the deed and lease executed on December 27, 1906, and consideration of all the circumstances of the transaction carried into effect thereby, we are convinced that these can not be considered as two transactions with a separate and individual loss or gain in each as the case may be. We are unable to accept respondent's theory of a loss incurred when the transaction shows a result entirely inconsistent with such conclusion. A theory assuming a fact, or by which a conclusion is reached, which is shown to be manifestly incorrect can not be accepted, no matter how sound in general principle or how plausibly the several steps leading up to the conclusion may be sustained. Petitioner's tax liability is determined by the facts as they actually exist. On this question the court in *Haugh & Keenan Storage & Transfer Co.* v. *Heiner*, 20 Fed. (2d) 921 said:

Taxes are not laid and collected on theory, but on a situation actually existing, as the facts may show that situation to be. Theory is applied in the absence of such facts. The question of taxation is one of fact, and cannot turn on theories or fiction.

In the transaction in question this petitioner received $250,000 in cash, a fixed net income of $61,000 per year for a term of 130 years, and a reversion of the property at the end of that time, and the total cost to petitioner of the property involved was $836,229.04. The value alone of the net income contracted for, capitalized at 6 per cent, was in excess of $1,000,000, and yet we are asked to conclude that a loss of $390,000 was sustained.

Petitioner insists that the deed and lease executed on December 27, 1906, were merely incidents of one transaction in which it dis-

posed of the use of its property for the term of 130 years for a cash payment of $250,000 and an annual rental of $61,000 per year.

It is an unquestioned rule of construction that two instruments executed in carrying out the same transaction must be read and construed together in determining the intent of the parties, and that such intent will be given effect irrespective of the particular names given the individual instruments by the parties or the particular form in which they are drawn. *Fidelity Trust Co.* v. *Mc-Keithan Lumber Co.*, 212 Fed. 229; *O'Neil* v. *Caples*, 257 Ill. 528; 101 N. E. 50; *Huylers* v. *Ritz Carlton Restaurant & Hotel Co.*, 1 Fed. (2d) 491; *Lewis* v. *Curnutt*, 130 Iowa 423; 106 N. W. 914; *Crabtree* v. *Crabtree*, 136 Iowa 430; 113 N. W. 923; *Jacobs* v. *All Persons*, etc., 12 Cal. App. 163; 106 Pac. 896; *Metropolitan Securities Co.* v. *Ladd*, 173 Fed. 269.

In *Empire Gas & Fuel Co.* v. *Stern*, 15 Fed. (2d) 323, the grantor sued upon his deed to recover the stated consideration, which had not been paid, the deed having been delivered together with a draft for acceptance, in accordance with a contract obligating the grantee to accept the draft upon delivery of a deed conveying a merchantable title. The court, in holding that the obligations of the parties were not limited to those set out in the deed alone, said:

The contract, draft and lease were part of one transaction. In the eye of the law they are one instrument. They will be read and construed together, as if they were one in form as they are in substance.

In *Uecher* v. *Zuercher*, 54 Tex. Civ. App. 289; 118 S. W. 149, in which one of the issues was the sufficiency of the consideration for a deed to land, the grantor as plaintiff insisting that it was limited to the one stated in the instrument and the defendants contending that it included the obligation placed upon them by a separate contract, executed at the same time, whereby, for a small stated consideration, they agreed to furnish plaintiff maintenance and support for life, the court said:

The deed and the contract were executed at the same time and formed one transaction. The latter was a part of the consideration for the deed, and in legal contemplation had the same effect as if it had been incorporated in the deed, instead of being taken and considered separate from the deed and destructive of it.

In the case before us it can not be questioned that these two instruments were executed as parts of one single transaction. Both instruments by express recital bear witness to this fact. The execution of the deed and the payment of $250,000 cash is expressly stated by the lease to be one of the considerations for its execution. We must, under the rule of construction laid down, construe these instruments as if they were one, and the ultimate interest received by the grantees

under both, so construed, must be considered as represented by the total of the considerations received under each by petitioner.

What is the ultimate interest received by the grantees under this deed? It purports to convey to them an unrestricted, fee simple title to the building, but the conditions of the lease of the land, which by the rule of construction noted are considered as embodied in it, impose definite and specific restrictions in respect to the building which are inconsistent with the ownership of a fee simple estate, by obligating them to keep the building insured for its full insurable value, to keep it in repair, to give bond to petitioner before making structural changes or repairs which necessitate the demolition of a portion of the building, and finally requiring them to return the lot at the end of the lease period with these improvements as maintained, or similar ones of a value of not less than $500,000. These restrictions reserve to the grantor a reversionary interest in the building itself in addition to the land and it can not be said, in our opinion, that the effect of the transaction was to divest petitioner of all interest in the building and leave it with $250,000 representing that interest.

The form of the conveyance of the building is that of a warranty deed, but the reservations noted result in the grantees taking no greater beneficial interest in that property than they would had the instrument been a lease for 130 years. The form of the conveyance does not determine the interest taken. This is illustrated in the case of *Leonard* v. *Read* (Tenn. Chan. App.), 36 S. W. 581, where the owner of a lot and building sold it by warranty deed in which he expressly reserved title to two rooms in the building. The court held that although the wording of the deed reserved the legal title, the effect was merely a lease of that portion of the building to the grantor, without rent, for so long as the building existed.

We are dealing here with a question of invested capital as an incident of tax liability. Our concern is with the ultimate beneficial interest surrendered by petitioner and the consideration received therefor, and not with the delicate questions of conveyancing and the technical estates created in law by the particular method used. These questions may be important in determining the particular rights and remedies of the parties in proceedings for reentry on breach of covenants of the agreement, but we have no such questions here. Our question is whether the transaction has resulted in petitioner disposing definitely and finally of certain of its capital assets and under the record we must conclude that it has not done so.

By this transaction petitioner has, in fact, only surrendered the use and occupancy of its property for a term of 130 years, at the

1310

end of which time it will stand possessed of it again. The total consideration to it for this transaction was $250,000 cash and a yearly rental of $61,000. The identical result in so far as benefits and ultimate interest received are concerned, would have been effected by the execution of a lease to land and buildings, with the same privileges and restrictions stated, for a cash bonus of $250,000 and a yearly rental of $61,000, and, as the court says in *Haugh & Keenan Storage & Transfer Co.* v. *Heiner*, *supra*, " Taxes are not laid and collected on theory, but on a situation actually existing, as the facts may show that situation to be."

Our conclusion is that the transaction was in fact, in so far as petitioner's tax liability is concerned, a lease of the property for a cash bonus of $250,000 and a yearly rental of $61,000. The $250,000 in cash does not represent the sale price of a capital asset. *Nelson Land & Oil Co.*, 3 B. T. A. 315; *Louis Rothenburg*, 5 B. T. A. 666; *O'Day Investment Co.*, 13 B. T. A. 1230. Its distribution by petitioner to its stockholders was a distribution of income and not a liquidation of capital.

The deficiency will be recomputed in accord with the foregoing findings of fact and opinion.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*