MARVIN H. GATES, TRUSTEE, ESTATE OF JEMUEL C. GATES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46181.   Promulgated September 16, 1932.

*Claude W. Dudley, Esq.,* and *Henry W. Fox, Esq.,* for the petitioner.

*A. H. Fast, Esq.,* for the respondent.

OPINION.

LANSDON: The respondent has asserted deficiencies in income tax for the calendar year 1924 and the period from January 1, 1925, to August 3, 1925, in the respective amounts of $1,252.38 and $37,562.12. The following three issues are raised by the pleadings: (1) Did the petitioner sell a certain building in April, 1925, and receive therefor $186,269.46, or was such amount received as a bonus for the execution of a 99-year lease?   (2) Are amounts paid in 1924 and 1925 by the petitioner as lessor to secure long-term leases on property owned by the estate deductible as ordinary and necessary business expenses in the years in which paid?   (3) If the Board finds that the amount of $186,269.46 represents a bonus received for the 99-year lease, should the full amount be included in income where $86,269.46 thereof was represented by several promissory notes payable at fixed future dates?

The parties have stipulated that, if the Board finds there was a sale of the building in 1925, the respondent erred in allowing a deduction for depreciation on the Gates building for 1925 in the amount of $1,138.81.   They have also stipulated that, if the Board allows the deductions claimed under issue (2) above, the respondent erred in allowing deductions of $101.01 and $112.49 in 1924 and 1925, respectively, as amortization of the commissions and fees paid.

During the taxable year the petitioner was the sole trustee of the estate of Jemuel C. Gates, who died testate on August 2, 1915.

On April 20, 1925, the petitioner and beneficiaries of the trust entered into an agreement with De Vere Dierks, whereby the former

leased certain real estate to the latter for a term of 99 years at an annual rental of $40,000 until January 1, 1930, and $50,000 thereafter. Contemporaneously therewith the parties entered into another agreement, whereby those named lessors in the lease granted, sold and conveyed to Dierks a seven-story and basement business building located on the land covered by the 99-year lease. The consideration stated in the amount of $186,269.46 was paid in cash to the extent of $100,000, the balance being paid by four promissory notes, each in the amount of $21,567.39, due in 1, 2, 3 and 4 years, respectively. The notes, which drew interest at 5 per cent, were secured by a deed of trust to the building. The instrument of conveyance to Dierks, which was in the form of a warranty deed, provides that he shall take the building " subject, however, to a certain lease of even date " and subject to all of the terms, provisions, covenants, liens and encumbrances provided in said lease. The lease referred to provides, *inter alia:*

During the term of this lease the Lessee may at all times * * * demolish, rebuild, remodel, alter and repair all improvements now or hereafter on the demised premises in such reasonable manner as the Lessee shall choose, and may add additional stories, subject to the following conditions:

(1) Nothing shall be done which will unduly weaken the structural support of any building on the premises, diminish the value of any such building or make any such building structurally dependent on any building on adjacent property.

(2) As a condition precedent to the right to demolish any improvements * * * and as a condition precedent to the making of any alterations or additions to any such improvements * * * the Lessee shall furnish to the Lessors a good and sufficient bond executed by the Lessee as principal and with a surety or sureties satisfactory to the Lessors. * * *

(3) Any building built now or remodeled as herein authorized shall cover substantially the entire leased land and shall be so built that it can be used separately from any building on any adjacent property, and shall, when completed, be of a value at least as great as the value of the building now on said premises, and in any event not less than Two Hundred and Twenty-five Thousand Dollars ($225,000). Any new building shall be at least seven (7) stories high, in addition to basement, and shall be of fireproof construction. * * *

*    *    *    *    *    *    *

The Lessee agrees that during the entire time that the tenancy hereunder shall continue, it will, at its own cost keep any and all buildings now standing or which may hereafter be erected upon the demised land and all the appurtenances thereto belonging in good condition of repair and preservation, and will keep all exposed wood and metal work well painted so as to prevent deterioration and keep all brick and stone work well pointed * * *

*    *    *    *    *    *    *

The Lessee covenants and agrees to carry at its own expense at all times during the term of this lease, if obtainable, rent insurance protecting the Lessors against loss of rents on account of untenantability due to fire in a sum equal to the annual rent reserved in this lease, the policies therefor to be

delivered to and kept by Lessors. * * * In the event any improvement on the premises shall be partially or wholly destroyed by fire or otherwise, the rent payable hereunder shall be abated to the extent (but no more) of the amount of money that the Lessors shall receive upon such policy or policies of rent insurance.

* * * * * * *

If any such damage or destruction should occur during the last five (5) years of this term, the Lessee, at its option, may elect not to rebuild by giving unto Lessors written notice of its intention within thirty (30) days after such damage or destruction; and upon such notice being given to Lessors, this lease shall terminate and all insurance moneys payable to the Trustee as hereinabove provided shall be and become the property of the Lessors * * *.

* * * * * * *

The Lessors concurrently herewith have severed from the realty and sold, conveyed and transferred to the Lessee the building known as the Gates Building, now upon the said premises. Said building, though owned by the Lessee, is subject to a mortgage or deed of trust securing notes for a part of the purchase price thereof made by the Lessee and payable to the Lessors for an aggregate amount of Eighty-six Thousand Two Hundred Sixty-nine and 46/100 Dollars ($86,269.46). The conveyance and transfer of said building to the Lessee is subject to this lease, and said building and any additions or betterments thereto are and shall be security for the faithful performance by the Lessee of all of the terms and conditions of this lease. * * * Upon the forfeiture or termination of this lease for any cause under the provisions of Article XII hereof, the said Gates Building and any additions and betterments thereto and/or all other buildings or improvements upon the said premises owned by the Lessee (if the Lessee shall have any title or interest therein) shall forthwith be re-attached to the realty and shall revert to and become the property of the Lessors free and clear of any claim of the Lessee whatsoever, and shall be taken as liquidated damages for the breach of the covenant on account of which this lease shall have been so forfeited or terminated.

* * * * * * *

Upon the termination of this lease in any manner, whether by expiration or otherwise, all buildings, improvements, and fixtures (except trade fixtures) then standing upon the demised premises shall belong to and be the property of the Lessors free from any lien, mortgage or encumbrance made by the Lessee * * *.

* * * * * * *

At the end of the term of this lease, the Lessee and the tenants and sub-tenants under the Lessee will surrender possession of the demised premises and all buildings and improvements thereon (except trade fixtures) to the Lessors.

Prior to the transaction of April 20, 1925, on April 2, 1919, the Gates property, including the land and buildings, had been leased by the petitioner to J. H. Hettinger for a term of 10 years, beginning December 20, 1920. Under the terms of the will of decedent the trust estate was to be closed on August 3, 1925, and the trust property was to be distributed to the beneficiaries. In order that the estate might more easily be divided, the petitioner entered into

the alleged sale of the building. The Hettinger lease was purchased by Dierks for the remainder of the 10-year term and thereafter, on July 7, 1927, the Hettinger lease, the Dierks lease and the Gates Building were transferred to the Dierks Investment Company. By instrument dated December 1, 1929, the Dierks Investment Company executed a deed of trust covering its interest in the Gates Building and the lot upon which it is erected to secure a bond issue of $775,000, the proceeds of which were used along with an additional amount to add several stories to the Gates Building.

The value of the Gates Building on August 3, 1915, when it was acquired by the petitioner, was $200,000. The expected life of the building at that date was 50 years. The depreciated cost of the building on April 20, 1925, was $161,150.69.

In connection with the above transactions whereby the petitioner leased the land upon which the Gates Building was situated for 99 years and purported to sell the Gates Building, he paid $18,592 as commissions to real estate men for services rendered in negotiating and consummating the transactions and $500 to attorneys for services rendered in drawing up the legal instruments.

During the taxable year 1924 the petitioner leased certain property belonging to the estate, known as the Hayes Building, for a period of 99 years. For services rendered in connection therewith he paid commissions in the amount of $10,000.

On his income-tax return for 1924 the petitioner deducted the $10,000 paid as commissions in connection with the Hayes lease as ordinary and necessary business expense. The respondent disallowed the deduction and prorated the amount over the 99-year term of the lease. On his income-tax return for the period from January 1, 1925, to August 3, 1925, the petitioner deducted as an ordinary and necessary business expense the amounts of $18,592 and $500 representing commissions paid real estate agents and attorney fees. The petitioner did not report any profit from the alleged sale of the Gates Building. Upon audit of the return the respondent disallowed the deduction for commissions and attorney fees paid and prorated the amounts thereof over the term of the 99-year lease. He added to petitioner's income the entire amount of $186,269.46, determining that it was a bonus received for the execution of the 99-year lease.

The facts disclosed relative to the first issue are similar to those presented in *George W. Crile*, 18 B. T. A. 588; affd., 55 Fed. (2d) 804; and *Minneapolis Syndicate*, 13 B. T. A. 1303. In the former case the petitioner entered into an agreement whereby he purported to sell a building and lease the land on which it was situated. The petitioner claimed a loss upon the sale of the building which the

Commissioner disallowed. In approving the Commissioner's determination, the Board stated:

We think that the respondent's contention must prevail to the extent that the sale of the buildings was not a separate transaction resulting in a loss to the petitioner. * * *

\* \* \* \* \* \* \*

* * * The lease referred to, parts of which are shown above, provided that the lessor should have a lien on the buildings for the payment of rents and that the lessee would keep the buildings insured for the benefit of the lessor, and that at the expiration of the lease the buildings would revert to the lessor. The lessee was not privileged to remove the buildings without giving bond to the lessor in the amount of $150,000 to guarantee the construction of other buildings upon the premises at a cost of not less than $200,000. * * *

\* \* \* \* \* \* \*

In the instant case the petitioner's beneficial interest resulting from the transaction was substantially the same as if he had executed a similar lease of the entire property for a term of 99 years for a cash consideration of $100,000 and yearly rentals as stipulated in the lease. We conclude, therefore, that the petitioner did not sustain a deductible loss upon the sale of his interest in the buildings in question in the taxable year 1923.

In affirming the decision of the Board, the court used the following language:

The lease, and the lease alone, became the declaration and embodiment of the agreement of the parties, and under it the payment can be classified only as a bonus paid for the leasehold estate, as a consideration in the nature of rental.

In *Minneapolis Syndicate, supra*, the petitioner purported to sell a building for $250,000 in cash and to lease the land on which the building was located for a period of 130 years. A deed to the building was executed and delivered contemporaneously with the execution of the lease to the land. The respondent contended that the sale of the building and the lease were separate transactions and that by reason of the sale of the building the taxpayer's invested capital should be reduced. The Board held that the instruments must be considered together as a long-term lease and that the respondent erred in reducing the petitioner's invested capital. In our opinion we stated:

It is an unquestioned rule of construction that two instruments executed in carrying out the same transaction must be read and construed together in determining the intent of the parties, and that such intent will be given effect irrespective of the particular names given the individual instruments by the parties or the particular form in which they are drawn. *Fidelity Trust Co.* v. *McKeithan Lumber Co.*, 212 Fed. 229; *O'Neil* v. *Caples*, 257 Ill. 528; 101 N. E. 50; *Huylers* v. *Ritz Carlton Restaurant & Hotel Co.*, 1 Fed. (2d) 491; *Lewis* v. *Curnutt*, 130 Iowa 423; 106 N. W. 914; *Crabtree* v. *Crabtree*, 136 Iowa 430; 113 N. W. 923; *Jacobs* v. *All Persons, etc.*, 12 Cal. App. 163; 106 Pac. 896; *Metropolitan Securities Co.* v. *Ladd*, 173 Fed. 269.

\* \* \* \* \* \* \*

In the case before us it can not be questioned that these two instruments were executed as parts of one single transaction. Both instruments by express

recital bear witness to this fact. The execution of the deed and the payment of $250,000 cash is expressly stated by the lease to be one of the considerations for its execution. We must, under the rule of construction laid down, construe these instruments as if they were one, and the ultimate interest received by the grantees under both, so construed, must be considered as represented by the total of the considerations received under each by petitioner.

\* \* \* \* \* \* \*

The form of the conveyance of the building is that of a warranty deed, but the reservations noted result in the grantees taking no greater beneficial interest in that property than they would had the instrument been a lease for 130 years.

\* \* \* \* \* \* \*

By this transaction petitioner has, in fact, only surrendered the use and occupancy of its property, for a term of 130 years, at the end of which time it will stand possessed of it again. The total consideration to it for this transaction was $250,000 cash and a yearly rental of $61,000. The identical result in so far as benefits and ultimate interest received are concerned, would have been effected by the execution of a lease to land and buildings, with the same privileges and restrictions stated, for a cash bonus of $250,000 and a yearly rental of $61,000 \* \* \*.

We must reach the same conclusion in the instant case that we reached in the *Crile* and the *Minneapolis Syndicate* cases. We think the two instruments constitute a lease of the property for 99 years in consideration of a bonus of $186,269.46 and an annual rental of from $40,000 to $50,000.

The fact that $86,269.46 was paid by giving promissory notes secured by a deed of trust on the building does not eliminate that amount from taxable income. So far as the record discloses the notes were worth their face value. We think the total amount of $186,269.46 should be included as income in the taxable year.

We have repeatedly held that commissions paid by a lessor to secure a lease on property owned by him constitute capital expenditures, which must be amortized over the term of the lease. *Bonwit Teller & Co.*, 17 B. T. A. 1019; affd., 53 Fed. (2d) 381; certiorari denied, 284 U. S. 690. *Mary C. Young*, 20 B. T. A. 692; *Spinks Realty Co.*, 21 B. T. A. 674; *Home Trust Co.*, 21 B. T. A. 1255; *Sigmund Spitzer*, 23 B. T. A. 776; *Geo. W. Griffiths*, 25 B. T. A. 1292; affd., 53 Fed. (2d) 381; *Central Bank Block Ass'n.*, 19 B. T. A. 1183; affd., 57 Fed. (2d) 5. In accordance with our holdings in those decisions the commissions and attorney fees paid by the petitioner to secure a lease on his property were properly amortized over the life of the lease by the respondent.

*Decision will be entered for the respondent.*