FIDELITY TRUST CO. v. D. T. McKEITHAN LUMBER CO. et al.

(District Court, E. D. South Carolina. January 16, 1914.)

1. LOGS AND LOGGING (§ 3*)—MORTGAGE OF STANDING TIMBER—PROVISION FOR SINKING FUND.

A provision of a mortgage on standing timber, requiring the mortgagor to pay into a sinking fund provided for therein $2.50 per thousand feet of timber cut by the mortgagor, *held* to apply only to the timber described in the mortgage, and not to timber on another tract of land, which the mortgagor did not then own, but held an option to purchase which it afterward exercised.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. REFORMATION OF INSTRUMENTS (§ 45*)—MORTGAGE—MUTUAL MISTAKE.

The mortgagor *held*, on the evidence, entitled to the reformation of a mortgage by the insertion of a provision which was agreed upon between the parties, but omitted through mutual mistake.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 157–193; Dec. Dig. § 45.*]

3. ESTOPPEL (§ 78*)—EQUITABLE ESTOPPEL—PAROL AGREEMENT MADE ON DELIVERY OF BONDS OF CORPORATION.

Holders of bonds of a corporation, delivered after their date, *held* estopped, by an agreement made at the time of delivery, to claim interest except after the date agreed upon.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 204–210; Dec. Dig. § 78.*]

4. DEEDS (§ 99*)—CONSTRUING INSTRUMENTS TOGETHER—DEED AND CONTRACT THEREFOR.

A deed executed pursuant to a prior written contract therefor, in so far as it covers matters dealt with by the contract, controls as the final agreement of the parties, but as to any matter of ambiguity, or referred to in and to be performed by the contract, but not covered by the deed, the contract may be referred to as governing the rights of the parties.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 261–265; Dec. Dig. § 99.*]

5. DEEDS (§ 114*)—CONSTRUCTION—PROPERTY CONVEYED.

A deed by a lumber company to all of its property (except choses in action acquired and debts owing to it prior to April 1, 1911, etc.), "including all accounts, debts, claims, and demands for or on account of lumber sold since April 1, 1911," *held* to entitle the purchaser to all such accounts and claims outstanding at the time of delivery of the deed, but not to cash previously received for lumber sold after April 1st.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 316–322, 326–329, 388; Dec. Dig. § 114.*]

6. CORPORATIONS (§ 625*)—DISSOLUTION—LIABILITY OF STOCKHOLDERS.

Where a corporation has been dissolved, and its assets distributed, an unpaid creditor, after establishing his claim, can recover from a stockholder only to the extent of assets received by the stockholder in the distribution.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2473; Dec. Dig. § 625.*]

7. LOGS AND LOGGING (§ 2*)—SALE OF TIMBER LAND—RIGHTS OF PURCHASER—MISREPRESENTATION BY VENDOR.

Officers of two lumber companies, in good faith, supplied to a prospective buyer, who afterward did purchase, estimates of the quantity of timber on the property of the companies previously made by two cruisers, selected, one by the companies, and the other by another intending purchaser. The contract of sale was not made until two months afterward, and the sale was not concluded for another two months, during all of which time the purchaser had full opportunity to examine the property. The deed recited that the property was the same recently cruised by such two persons, and stated their estimate, but contained no warranty or further representation of quantity. *Held*, that neither the vendors nor their officers were liable because of a deficiency in quantity below the cruiser's estimate.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 1–5; Dec. Dig. § 2.*]

8. LOGS AND LOGGING (§ 3*)—CONVEYANCE OF STANDING TIMBER—CONSTRUCTION.

A deed conveyed the standing timber on a tract of land, but expressly stated that the timber undertaken to be conveyed was the same conveyed

to the grantor by a certain described and recorded deed. The latter deed was made expressly subject to the rights of third persons named, to whom a prior owner had conveyed all the timber, with the right to enter upon the land and cut and remove the same, with a warranty of the timber for the term of 20 years. *Held:* (1) That, under the rule of decision in South Carolina, the latter deed must be construed as conveying only so much of the timber as should be cut and removed within 20 years from its date; and (2) that the grantee in the latest subsequent deed took with notice that the timber conveyed to it was that remaining on the land at the expiration of such 20 years.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

In Equity. Suit by the Fidelity Trust Company, trustee, against the D. T. McKeithan Lumber Company, J. M. Barr, W. R. Bonsal, and D. T. McKeithan. Hearing on various issues raised by answers between the corporation defendant and complainant, and between such defendant and its codefendants.

Mitchell & Smith, of Charleston, S. C., and Williams, Thomas & Williams, of Baltimore, Md., for complainant.

Louis G. Addison, of Columbus, Ohio, James Simons, of Charleston, S. C., and Willcox & Willcox, of Florence, S. C., for defendants.

SMITH, District Judge. In this cause a bill was filed by the complainant to obtain the instruction of the court upon certain legal questions in the interpretation of the trust instrument with regard to the performance of its duties thereunder. The complainant is the mortgagee trustee. To the bill of complaint there were made as parties defendant the D. T. McKeithan Lumber Company, the mortgagor, and the three individual defendants, Bonsal, Barr, and McKeithan, as being the sole beneficiaries under the terms of the deed of trust by way of mortgage, as they were the holders of all the obligations thereby secured. An answer was filed by the defendant the D. T. McKeithan Lumber Company, and a separate and independent joint and several answer was filed by the three individual defendants. The questions as to the construction of the mortgage upon which the complainant sought the direction of the court came to a hearing and were decided by a decree filed in this court on the 21st day of May, 1913. Other questions were raised by the answers of the codefendants as against each other, as well as one against the complainant. The individual defendants, Barr, Bonsal, and McKeithan, alleged that their codefendant, the D. T. McKeithan Lumber Company, was engaged in cutting a large quantity of timber from a tract of land of 2,700 acres, known as the Bright Williamson timber, upon which, when cut, it was required, under the terms of the mortgage, to pay the sum of $2.50 per thousand feet into the sinking fund provided for by the mortgage, as to be paid to the trustee under the mortgage. The other defendant, the D. T. McKeithan Lumber Company, has filed an answer and supplemental answer setting up a number of counterclaims under rule 31 of the rules in equity (198 Fed. xxvii), which answer and supplemental answer were duly served upon the codefendants, the individual defendants

herein, who filed a general reply thereto. These counterclaims in brief are five in number and set up the following contentions:

(1) That the deed of trust by way of mortgage should be reformed so as that the clause therein providing for certain payments to be made out of the sinking fund therein provided for, and which has been construed by this court by its decree already filed not to include and cover the payment of the annually recurring interest upon any bonds except those which mature in the year of payment, should be reformed so as to permit and require the payment by the trustee out of the sinking fund of the annual interest on all the bonds outstanding, whether they mature in the current year or not.

(2) That the plaintiff had paid and redeemed $20,000 at par value of the bonds secured by the deed of trust by way of mortgage, and was entitled under the terms of deed to have the mortgagee release and discharge from the lien of the mortgage an equal pro rata or proportion of the mortgaged properties; that, although request had been made of the trustee so to do, it had failed to perform its duty in that regard, under the terms of the deed of mortgage.

(3) That the individual defendants, as holders of all the bonds secured by the mortgage, had taken the same with notice that the D. T. McKeithan Lumber Company had been led to believe that its mill would be completed and ready for operation by the 1st day of October, 1911; that, by reason of the representation on behalf of the corporations from which the defendant had purchased the property to that effect, it had delivered the bonds to its individual codefendants upon the understanding that, inasmuch as the mill had not been completed and ready for operation until the 1st day of January, 1912, one-half of all the coupons on the bonds payable on the 1st day of April, 1912, should not be presented for payment, but should be canceled.

(4) That part of the consideration given by the defendant the D. T. McKeithan Lumber Company for the purchase of the mortgaged premises was the agreement on the part of its vendors, the Williams-McKeithan Lumber Corporation of Virginia and the Williams & McKeithan Lumber Company of South Carolina, that all accounts and claims for lumber sold since April 1, 1911, should be paid to the vendee; that the aggregate amount of lumber sold since that date up to the date when the final conveyance was made to the vendee and the vendee put in possession was $60,958.53, of which the estimated balance remaining after the payment of freight was $42,670.97, of which about $11,887.92 had been paid, leaving unpaid $30,783.05; that the codefendants, the individual holders of the bonds, had taken the bonds with full knowledge of the obligation to pay this amount, and its failure, and that the amount so due should be taken off from the bonds in the hands of its codefendants.

(5) That misrepresentations of a most material question had been made as to the quantity of timber, in consideration of the purchase of which the bonds secured by the deed of trust by way of mortgage had been given; that the D. T. McKeithan Lumber Company was entitled to an abatement in price to the extent of this deficiency; and that the individual bondholders had received and accepted the bonds with full

knowledge of the fact that the said bonds had been given in part payment of that timber, and of the deficiency therein, and that the plaintiff is entitled to have a decree for the amount of such deficiency, and that the same should be deducted from the amount of the bonds in the hands of the individual codefendants.

(6) The counterclaim interposed in the supplemental answer and counterclaim, to the effect that the bonds held by the individual codefendants were in like manner responsible in the hands of the individual codefendants for a failure of consideration in the nonconveyance and delivery to the D. T. McKeithan Lumber Company by the vendor corporation, before referred to, of the timber upon a large tract of 3,088 acres of timber mentioned therein, and of the failure to include in the deed of conveyance the timber upon five smaller tracts of land also mentioned therein; that, for the damages or failure of consideration thereby inuring to the D. T. McKeithan Lumber Company, the individual codefendants, as holders of the bonds, should be decreed to have the amount of such damage or deficiency deducted from the amount of their bonds.

There is involved in one of the counterclaims for a failure of consideration the claim that, at the time of the purchase of this property, representations were made which are, for the purposes of the prayer of the counterclaim binding upon the individual defendants to the effect that one of the tracts of land sold, to wit, that lying along the Great Peedee river, was in a contiguous connected tract, with a solid boundary; that it appeared that such was not the case; one portion was separated by an intervening tract, which very much affected the value of the timber thereon by reason of the increased cost of manufacturing and marketing, and that was an element of loss to be considered in estimating the amount of the failure of consideration.

The case having come to a hearing upon these issues, the testimony propounded by the parties has all been heard, and counsel on behalf of all parties interested have been heard, and it is thereupon now adjudged and decreed as follows:

[1] First. With reference to the contention raised by the three defendants that the codefendant, the D. T. McKeithan Lumber Company, should be required to pay the sum of $2.50 to the trustee mortgagee on account of the sinking fund provided for in the mortgage, the court finds, as a conclusion of fact, that the timber on the Bright Williamson tract was not owned at the date of the mortgage by the mortgagor; that it is not specifically described or included within the property mortgaged or covered by any of the express terms thereof; that, as already decreed by this court, the mortgage must be understood as referring to its date and to the property then held and possessed by the mortgagor. In this case the mortgagor possessed only an option to purchase this timber. This option had been given years before for the payment of a sum of money very much less than the amount to be paid for the timber itself, should the option be exercised. It was entirely within the discretion of the mortgagor whether it should or should not exercise its option. The money to be paid for the timber, if it did exercise the option, was in no wise included within the

property mortgaged. The mortgagee and the beneficiaries under the mortgages had no interest in this money. This investment in the timber was not a part or in substitution of any property subject to the mortgage, but was the investment therein by the mortgagor of a sum of money which it was in no way bound to make, under the terms of the mortgage. If it had never seen fit to exercise the option, the amount of the property mortgaged would not have been diminished. The court holds that, under the terms of the option, it was not bound to exercise it so as to enhance the amount of property mortgaged. It is therefore decreed, as a conclusion of law, that the timber upon the Bright Williamson tract is not subject to the terms of the mortgage, and the mortgagor is not bound to pay into the hands of the trustee, as part of the sinking fund provided for by the terms of the mortgage, the sum of $2.50 per thousand upon any part of the timber cut and removed therefrom.

[2] Second. Under the first above-mentioned counterclaim made by the defendant the D. T. McKeithan Lumber Company, the court finds as a conclusion of fact from the testimony in the cause, as well that on behalf of the D. T. McKeithan Lumber Company as on behalf of the individual defendants by their own personal testimony and admissions on the stand, that the failure to provide in the mortgage that the interest upon all the outstanding bonds accruing in any and every current year should be paid out of the sinking fund was a mutual mistake; that it was agreed and understood by all the parties that such should be the provision, and the failure to incorporate such a provision, and the so phrasing of the provision in the mortgage as that it should not be paid, was an unintentional oversight or error of the parties or their draftsman. It is therefore decreed that the mortgage deed should be reformed so as that the mortgagor, the D. T. McKeithan Lumber Company, and the mortgagee, the Fidelity Trust Company of the city of Baltimore, both of whom are parties to this cause, shall within 30 days from the date of this decree jointly and interchangeably execute and deliver a supplemental deed in due and proper form, amending and reforming the deed of trust by way of mortgage set up and referred to in the bill of complaint in the seventh clause thereof, beginning with the clause in the ninth line, which begins with the word "such," by modifying the same so as to read as follows:

"Such moneys so paid shall be used by the trustee for the payment of interest upon all outstanding bonds as the said interest may accrue and become due and also to the retirement of any bonds that shall be due with interest on the same at the date of retirement."

It is further ordered that such supplemental deed, when executed, shall be duly recorded by the mortgagor at its own expense in all the counties proper for the record of the same, with leave to have a marginal note or memorandum on the record of the original deed of trust or mortgage referring to the place of the record of the supplemental and reforming deed hereby directed, and that a due report of the execution and record of the same, together with a copy of the supplemental deed and a statement of the places of record, be filed in this court.

Third. So far as the claim contained in the second of the above-enumerated counterclaims is concerned, viz., that the trustee should be decreed to release an amount of the property covered by the mortgage equal in pro rata proportion to the amount of the bonds paid, the court finds as a conclusion of fact that there is no sufficient testimony before the court to find that any bonds have been paid and discharged, or that any request has been made of the trustee to release and discharge from the lien of the mortgage any pro rata proportion of the property covered by the same, or that there has been any adjustment and ascertainment of the property so to be released. It is thereupon decreed that, as to the counterclaim contained in the answer upon this point, the defendant the D. T. McKeithan Lumber Company is not entitled to any decree in its behalf on said counterclaim, and the same is refused, but without prejudice to any application said defendant may make at the foot of this decree upon due notice to be allowed to prove and establish the payment of any such bonds paid prior to the date of this decree, and for an order thereon establishing and decreeing the release from the mortgage of the due proportion of the property mortgaged.

[3] Fourth. The question made under the third counterclaim interposed by the answer of the defendant the D. T. McKeithan Lumber Company is that the coupons upon the bonds secured by the mortgage maturing the 1st of April, 1912, and now in the hands of the three individual defendants, be annulled to the extent either of one-half of the said coupons or of one-half in amount of each separate coupon, so as that the interest to be paid upon the mortgage shall be the interest accruing only from the 1st day of January, 1912.

The testimony upon this case, taken as a whole, leads to the conclusion that there was a very serious contention or series of contentions between the individual defendants and the D. T. McKeithan Lumber Company as to many matters claimed by the D. T. McKeithan Lumber Company as against the defendants upon an allegation of their liability to perform certain alleged undertakings of the vendor corporations, to wit, the Williams-McKeithan Lumber Corporation of Virginia and the Williams & McKeithan Lumber Company of South Carolina. The D. T. McKeithan Lumber Company had refused to deliver to the vendor corporations or the individual defendants the bonds secured by the mortgage as being a part of the purchase money for the mortgaged property, upon the ground that they should not be delivered until certain claimed liabilities had been performed and satisfied. In February, 1912, after sundry conferences and disputes, apparently an agreement was reached between the D. T. McKeithan Lumber Company and the individual defendants (excepting the defendant J. M. Barr), which agreement was embodied in a letter written by George E. Dargan, the attorney for the D. T. McKeithan Lumber Company, to the Honorable F. K. Pendleton, New York City, dated February 15, 1912, in which it was stated that four matters had been agreed to, namely, that the bonds should be delivered to the individual defendants who held the interim certificates; that the stock of the corporation should be transferred to the individual defendants,

both of which were to be done by the D. T. McKeithan Lumber Company; that then a certain tract of land, known as the Stucky land, of 300 acres should be conveyed to the D. T. McKeithan Lumber Company, the cost thereof to be paid by the individual defendants; and lastly that all interest on the bonds of the company up to January 1, 1912, should be renounced. The contents of that letter, as stating the agreement of the parties on those points, the court finds as a conclusion of fact was known to and acquiesced in by the individual defendants at the time, except the defendant J. M. Barr. In pursuance of that agreement, the D. T. McKeithan Lumber Company on the 22d of February, 1912, did deliver to the defendant D. T. McKeithan, to be delivered to his individual codefendants, the bonds and the stock, and those bonds and that stock were subsequently delivered. Having received the bonds and stocks in that way and under that agreement, the court finds as a conclusion of law that the individual defendants would be estopped now from claiming any interest to the 1st of January, 1912. In the case of the defendant J. M. Barr, he was not shown to have given any assent at the time to that agreement, but the evidence does show to the court that he received his bonds after he had been notified by his individual codefendants of the terms upon which they had been sent for delivery, and, under those circumstances, in the opinion of the court he is likewise estopped; and the D. T. McKeithan Lumber Company is therefore, under those circumstances, entitled to an abatement of interest to the amount of the interest due from the date at which interest began to run on the 1st day of October, 1911, to the 1st day of January, 1912.

It is therefore decreed that upon the payment by the D. T. McKeithan Lumber Company, within 30 days from the date of this decree, to the defendants of all interest represented by the coupons maturing on the 1st of April, 1912, and accruing from the 1st of January, 1912, together with interest from the date of the maturity of such coupons to the actual date of payment, the same shall be delivered up and be canceled for delivery to the trustee.

During the argument of the cause it was orally stated that all the coupons maturing the 1st of April, 1912, have been already paid. If such be the case, leave is hereby given to the defendant the D. T. McKeithan Lumber Company to move at the foot of this decree, upon due notice, for an order that an abatement equivalent to the abatement hereby ordered be made to be deducted from the coupons maturing the 1st of April, 1914.

Fifth. The next question raised by the counterclaims, viz., the fourth above mentioned, is the right of the D. T. McKeithan Lumber Company to have these defendants pay, in the way of being credited on the bonds or coupons, the sum of $30,783.05, claimed by the D. T. McKeithan Lumber Company to be due to it as representing the proceeds of lumber sold subsequent to the 1st of April, 1911. On this point the pleadings before the court would not call for any such decree. The parties who made the agreement were not these three individual defendants. They were two corporations, known as the

Williams-McKeithan Lumber Corporation of Virginia and the Williams & McKeithan Lumber Company of South Carolina.    Neither of those corporations are before the court, and a charge of this kind, involving the liability of these corporations to the D. T. McKeithan Lumber Company, under an agreement such as set up in the pleadings and in the testimony produced, would not entitle the D. T. McKeithan Lumber Company to a decree under the pleadings in this case, inasmuch as the court holds that for that purpose primarily the two corporations making the covenant or undertaking are necessary parties to the determination of the amount thereunder.    But in this case the parties have entered, through their counsel, into a stipulation in which they agreed, in writing, filed in the cause, that all questions and controversies growing out of the transaction set forth in the bill and answers hereto shall be fully heard and determined in this cause to the same extent and as fully as if independent suits were brought by the various parties hereto for that purpose, and that no party shall be deprived or prevented from having all questions heard which could arise or be heard upon original bills.    Nor shall any party to this suit be prejudiced in the hearing of this cause by the form of the action.    The stipulation proceeds that neither the bondholders, J. M. Barr, W. R. Bonsal, and D. T. McKeithan, nor the D. T. McKeithan Lumber Company shall be prevented from having any and all causes of action, defenses, and questions, which either or any of them might litigate or raise in an independent suit, heard and determined in this suit, to the end that all disputes, questions, and controversies existing between the said D. T. McKeithan Lumber Company, the said J. M. Barr, W. R. Bonsal, and D. T. McKeithan, and the trustee, the Fidelity Trust Company, shall be heard and determined in this suit.    The court understands that stipulation as going to the effect that the parties agreed that all questions upon the answers and counterclaims, as properly alleged and set out in this proceeding, shall be determined in like manner as the court might determine the same, if the same had been propounded by original proceedings in the shape of original bills of complaint for the purposes set up in the said counterclaims, and to which the defendants had been properly made parties.

The testimony shows that the two vendor corporations, above referred to, are, as to one of them at least, the Williams-McKeithan Lumber Corporation of Virginia, no longer existing.    The testimony is that that corporation has been dissolved and its charter surrendered. Wherever a company goes out of existence or becomes insolvent or in any wise unable to respond, any one having a legal claim against that corporation has the right to assert it against the corporation, and, in case of adjudication in his favor, has a right upon the judgment recovered in equity to pursue the individual stockholders for the satisfaction and payment of that judgment to the extent of assets received by the stockholder which he was not entitled to receive as being primarily subject to the payment of debts and liabilities of the corporation.    Under these circumstances, the court understands the stipulation to mean that the D. T. McKeithan Lumber Company

would have the same right upon the counterclaim, for failure of consideration or any other counterclaim, to pursue these individual defendants as it would have had if it had recovered the judgment against the corporation, except that any matter of defense may be set up to the counterclaim, no judgment having been recovered; and, for any such claim as in this suit the D. T. McKeithan Lumber Company shall make it appear to the court that they would be entitled to recover judgment against such corporation, they have a right to pursue these individual defendants, as stockholders, to the extent of assets received applicable to that judgment, for the purpose of having the same paid. The testimony shows that E. M. Poston, trustee, entered into a contract with the Williams & McKeithan Lumber Company of South Carolina and the Williams-McKeithan Lumber Corporation of Virginia on the 6th day of May, 1911, for the transfer of certain properties. This contract is absolute in form, but required certain matters to be carried out by both sides to the contract, and contained a stipulation at the end that, if E. M. Poston, trustee, failed to carry out his part of the contract in 60 days from the date of it, he shall forfeit as liquidated damages in full, without further liability, the sum of $5,000 paid by him to the other parties to the contract at the time of the making of the contract. In pursuance of this contract, there was subsequently executed a deed of conveyance in full, or purporting to be in full, from the Williams & McKeithan Lumber Company and the Williams-McKeithan Lumber Corporation to the D. T. McKeithan Lumber Company; the latter being the corporation organized by E. M. Poston, trustee, to receive this conveyance under the terms of the contract of 6th of May, 1911. This last deed of conveyance to the D. T. McKeithan Lumber Company is not dated. It will take effect, therefore, from the date of its actual execution and delivery, and the only evidence upon the face of the deed as to that date is the date of its probate, which was the 3d of July, 1911, which the court construes to be, for the purposes of this case, the date of the execution and delivery of that deed.

[4] The evidence is that that deed was executed in pursuance of the contract, and it being later in date than the contract, and executed in pursuance of it, the court holds that, as to all matters in that deed which cover matters included in the contract, the deed of conveyance represents the consummation of the intent of the parties and the final construction of the contract at that time, and supersedes the contract; that as to any matters of ambiguity in the deed, or as to any matters referred to and to be performed in the contract, not covered by the terms of the deed, the contract would be referred to as the contract between the parties.

[5] On this question of the right to the proceeds of the lumber sold after the 1st of April, 1911, the language of the deed is that the vendors convey and sell to the vendee, the McKeithan Lumber Company, all the property of every kind and description whatsoever belonging to the said Williams-McKeithan Lumber Corporation of Virginia, whether the same be real, personal, or mixed (except choses in action acquired and debts owing to the corporation contracted prior

to the 1st of April, 1911, and claims for insurance on property destroyed by fire on the 3d day of April, A. D. 1911), including all accounts, debts, claims, and demands for or on account of lumber sold since April 1, 1911. The individual defendants claim that the proper construction of that language is that they were to sell the lumber, so to say, as for a going corporation, upon the 1st of April, 1911; that the agreement of the 6th of May, 1911, was an option which might or might not be exercised by the holder of the option; that, pending the exercise of that option, it was necessarily incumbent upon the vendor corporations to carry on their business, and, in order to carry on their business, they were necessarily bound to make the necessary expenditures therefor, and that therefore this language should have incorporated in it, as a necessary and reasonable sequence of the character of the contract, that this conveyance was to be made as of the 1st of April, and while the purchaser, if he exercised his option, would be entitled to the benefits of the sales of all lumber made after that date, it would necessarily be bound to pay all expenses necessarily incident to the sale of that lumber; that to hold otherwise would be to cast upon the vendor the loss of having for 60 days to carry on the business wholly at his own expense for the benefit of the vendee. While this may be a plausible argument to show that the contract, as made, was a very imprudent one for the vendor to make, yet that cannot control the plain language of the deed of conveyance purporting to be for valuable consideration, and under that the court holds as a conclusion of law that the vendee, the McKeithan Lumber Company, was entitled under that deed to all accounts, debts, claims, and judgments for or on account of lumber sold after the 1st of April, 1911; and, construing it strictly according to its terms, it means only such proceeds for sale of lumber as were on the 3d of July represented by unpaid bills or accounts receivable, not by any cash that may have been paid for the lumber sold in the interim. Although this may be the construction of that clause, it does not follow that the defendants are individually bound to have any amount due thereunder credited upon their bonds. The testimony shows that the Williams-McKeithan Lumber Corporation of Virginia, whose property was sold, had at the time of the sale an existing mortgage upon that property for $300,000, and that the bonds referred to in the contract of purchase to the extent of $300,000 of first mortgage bonds, to be secured by the mortgage on the same property by the D. T. McKeithan Lumber Company, were used in payment of the bonds secured by the then existing mortgage. This existing lien would be a lien on the property of the corporation not to be paid as any other debt, but to be paid in full in precedence over other debts, and the mortgage debt then existing would take precedence in payment out of the assets of the Williams & McKeithan Lumber Corporation of any unsecured obligation to pay to the D. T. McKeithan Lumber Company the proceeds of lumber sold after 1st of April, 1911, as contained in this deed.

As a conclusion of law it is therefore adjudged that the McKeithan Lumber Company is not entitled to have the individual defendants

credit, upon the bonds or the coupons thereon held by them, any amount that may be hereafter ascertained to be due under this clause of the deed of conveyance.

[6] Inasmuch, however, as under the stipulation this proceeding is to be treated as if the D. T. McKeithan Lumber Company were pursuing these individual defendants as stockholders, the question would then be as to how far they can be required to respond for assets in their hands outside of these bonds to the extent of any amount due under this clause of the deed of conveyance. The court holds that, in order to arrive at a conclusion on that point, the testimony would have to establish, first, who were the stockholders entitled to the assets of the Williams & McKeithan Lumber Corporation, and then the proportion and the assets received by each over and above the payment of the debts of that corporation, for which only they would be bound to respond. There is no sufficient testimony in this case for the court to make a final decree upon that point. It appears that there were other stockholders, certainly three, in addition to the stockholders now before the court, but the evidence is not definite as to what amount of assets has been received by each of these stockholders as representing assets to which they were entitled, as stockholders, over and above the bonds used for the payment of the bonded indebtedness and other debts. It is therefore decreed that it shall be referred to D. B. Gilliland, Esq., one of the standing masters of this court, to take the testimony that may be propounded by the parties to show: (1) Who were all the stockholders entitled to the purchase money agreed to be paid by E. M. Poston, trustee, and paid by the D. T. McKeithan Lumber Company, under the terms of the deed of conveyance; next, how much of those assets were applied to the payment of debts; and, lastly, how much of those assets were distributed among the stockholders either directly or indirectly, and how much thereof was received by the individual defendants herein, as being received by way of dividends representing their interest as stockholders in the corporation for which they would be bound to respond upon proper proceedings instituted against the stockholders for that purpose, and that he report the testimony and his conclusions of fact thereon to this court.

[7] Sixth. The fifth above-mentioned counterclaim interposed by the defendant the McKeithan Lumber Company is that it is entitled to a general, and at this date unascertained, deficiency in the purchase money paid for the purchase of the property described in the mortgage and in the deed of conveyance of the 3d of July, 1911, because of misrepresentations under which they purchased; that they purchased upon representations that there was a large amount of timber on these lands, which was grossly incorrect; that they had purchased upon representations that as to one large body of these lands they were composed of connected and adjacent tracts, which was incorrect in that a considerable acreage was separated from the rest by an intervening tract of land owned by separate third independent parties, and which was in no wise connected for the purposes of a lumber business in the sense of a utilization of the tract as a whole for that

purpose. It appears from the testimony that the witness E. M. Poston, who acted on behalf of what appears to have been the real purchaser in this case, the New York Coal Company, was approached by the sales agent of the Williams & McKeithan Lumber Company and offered these properties upon the suggestion of Mr. Williams, president of that company, and that upon this suggestion several interviews thereafter followed between Mr. Poston and Mr. Williams and the individual defendant McKeithan, and later the individual defendant Bonsal. The individual defendant Barr appears to have been no party to any of these negotiations. These negotiations were in the usual form of the offering of property. Mr. Poston made a trip to the situs of the property in South Carolina, and there met the defendant McKeithan and the witness Williams, the president of the company, and the negotiations then instituted were finally consummated, first by the contract of purchase dated 6th of May, 1911, and later by the deed of conveyance dated 3d of July, 1911. The D. T. McKeithan Lumber Company claims that the individual defendants by reason of their position as stockholders and officers, viz., as directors, mainly interested in the Williams & McKeithan Lumber Company of South Carolina and the Williams-McKeithan Lumber Corporation of Virginia, in some wise occupied the position of quasi trustees, as promoters bringing about the purchase or the sale, or as officers, first, of the vendor corporations, and then of the vendee corporation, and exercising a double duty and double responsibility, so to say, and they are to be held, therefore, as to any representations made to that high degree of responsibility which attaches to persons who hold the office of trustee. That is true as to officers of corporations and as to promoters, where the promoter, as such, occupies the position of an officer; in cases where he occupies a double position with regard to his interest, it is the application of the old doctrine that no man can be both vendor and purchaser where the rights of others are concerned. In order to be held to that high degree of responsibility, he must be in a position in which confidence and trust and power is lodged in him as representing and protecting these two antagonistic interests. The promoter or officer or independent owner, who sells his property and does not occupy that position, is held to no such responsibility.

The court finds as a conclusion of fact in this case that Mr. Poston and his associates in this case rested upon their own responsibility; that they relied, not upon the codefendants in this case as constituting their officers or trustees, but were treating with them in the purchase of this property at arm's length; that they were intelligent business men, well aware of their rights and well qualified and able to protect them, and they are not entitled in this case to rely upon any rule of responsibility, as that the individual codefendants held towards them any position as quasi trustees. The defendants Bonsal and Barr, so far from that, I find, had nothing whatsoever to do with these negotiations prior to their consummation in the contract of sale and deed of conveyance. That they acted wholly as directors and stockholders for the protection of their own interest personally, and that of their

212 F.—16

own companies, and they undertook in no wise any responsibility whatsoever to the D. T. McKeithan Lumber Company or to Poston and his associates, and they are not bound to any liability therefor. The testimony shows that when Mr. Poston came there had been made a so-called cruise or examination of the timber upon these properties; that this examination or cruise had been made for purposes entirely disconnected with this sale; that the witness Mortimer, who is now in interest with the D. T. McKeithan Lumber Company and has been shown by no testimony whatsoever, by any interest or otherwise, to be swayed by motives of twisting results for the benefit of the individual codefendants in this case, had proposed to buy an interest in the Williams & McKeithan Lumber Company of South Carolina. Before completing that purchase, he desired to be satisfied of the intrinsic value of the properties of that corporation; in order to satisfy him on that point, it was agreed between that corporation and himself that an investigation and examination of these properties should be made by two cruisers or timber examiners, one of whom was to be selected by Mortimer as representing one adverse interest, and the other was to be selected by the Williams & McKeithan Lumber Corporation as representing another adverse interest. These were so selected; a Mr. Divine, who appears to have been utterly unknown to anybody connected with the Williams & McKeithan Lumber Corporation, was selected by Mortimer as representing his adverse interest, as a person personally known to him; and a Mr. Morris was selected by the Williams & McKeithan Lumber Corporation. They began their investigation in September, 1910, long before any offer of these properties was made or suggested to Poston, and their investigations continued and were concluded at or about the time that Poston made his first trip to South Carolina to examine the properties. The testimony establishes that that investigation was for the purpose of ascertaining the intrinsic amount of timber owned by the company upon the lands in question and described in the deed of conveyance, and that it was conducted, from the testimony, perfectly fairly, honestly, and uprightly, and without any intention whatsoever of misrepresenting facts or circumstances for the purpose of the sale to Poston or any one else. That those results were not obtained by any of the three individual defendants, or by any officer of the Williams & McKeithan Lumber Corporation of Virginia, for secret motives, but were made for the purpose of arriving at a true result, and any acceptance by them of that was in absolute good faith. Upon the arrival of Mr. Poston in South Carolina, he was shown, together with his companion Mr. McManigal, the cruise sheets, cruise tabulations, and sketch maps embodying the results made by these examiners. I find as a conclusion of fact that these were shown to them, not in the way of absolute representations, but for the purpose of information in like manner as any vendor seeking to sell his property would furnish information to the vendee to whom he desired to sell it. It is ordinary and usual for the vendor to take an optimistic view of the extent and value of his properties, and his information as to that effect, when given in good faith and for the purpose only of informing the mind

of his vendee, does not constitute a representation or warranty as to value. These papers were laid before Mr. Poston and his associates. They had every opportunity to investigate and check; they were laid before them in March, early in March; the contract to purchase was not made until the 6th of May thereafter, and that contract to purchase beyond the amount of $5,000 was not obligatory on them to complete until the 5th of July, 1911, so that they had four months within which to advise themselves to any extent they saw fit as to the reliability of the information given them by the proposed vendors as an inducement to them to take up the matter of purchase. I find as a conclusion of fact that the action of the third defendant McKeithan, in any statement of representation that he made, was made in absolute good faith and in conviction of its verity, and that he has exercised towards E. M. Poston, trustee, and his associates and the D. T. McKeithan Lumber Company no conduct involving a breach of good faith, so far as the transfer of this property is concerned, for which he would be liable.

With regard to the other two defendants, Barr and Bonsal, I hold that they made no representations that the testimony discloses of any kind, and that they are not bound individually as holders of these bonds by any statements made by McKeithan, by Williams, or the cruisers as to what they believed to be the true amount of timber on this property. I hold further that in this case the words in the contract of sale to the effect that the property contemplated to be sold under this agreement includes all the timber holdings of the said Williams-McKeithan Lumber Corporation of Virginia, known as the Peedee river and Lynch's creek tracts, recently cruised by Messrs. Morris and Divine at 222,000,000 feet of stumpage, are words of description, not words of representation or warranty. The deed of conveyance itself contains no warranty as to the amount of timber. It grants and conveys all the property, including the lands, trees and timber, rights of way, and easements thereinafter mentioned and described, and then specifically describes the timber living and dead in general terms upon certain specifically described pieces of land. I find as a conclusion of law that under the law of South Carolina the conveyance of that standing timber was a conveyance of the freehold or real estate, and that in such a conveyance, unless the quantity of timber be stated and warranted, there is no warranty in the absence of fraud or misrepresentation. That in this case, if the purchaser had desired to have the quantity of his timber secured according to what he deemed a representation, it was his duty to have required it inserted in the deed in the shape of something equivalent to a warranty; that he is not entitled in this case to set up for a deduction of the purchase money a deficiency in quantity of the timber, where he has not required a warranty, upon any action against him for the purchase money, in the absence of fraud or misrepresentation, and I find as a conclusion of fact that in this case there was neither fraud nor misrepresentation.

It is therefore adjudged and decreed that under the terms of the deed of conveyance of the 3d of July, 1911, and the preceding con-

tract of sale of the 6th of May, 1911, construed as the court has heretofore indicated they only can be construed together, the D. T. McKeithan Lumber Company is not entitled, under the evidence in this case, to any decree against either the vendor corporations or these individual defendants for any alleged discrepancy in the amount of timber on the land between what they deemed to have been shown in the information furnished them and what they may now find to be actually thereon. That counterclaim is accordingly dismissed.

Seventh. The last counterclaim is upon the ground that as to several specific tracts therein mentioned, to wit, the tracts known as the Strother tract, the Mary Law tract, the Croswell tract, the Weatherly tract, and the Gardner tract, such tracts were not specifically included in the deed of 3d of July, 1911. I find that in the memorandum made by Mr. Poston himself on the 18th of March, 1911, at the occasion of his first trip to Charleston, those tracts were specifically called to his attention, and he was specifically notified that they were part of the tracts, the timber on which was claimed by the Williams & McKeithan Lumber Corporation of Virginia, and to be sold to him. They were not inserted by any specific description in the deed of conveyance, but that was no more the fault or negligence of the vendors than of Mr. Poston himself. He had in his hands a specific detailed statement which he claims was dictated by him from information furnished him at that time, in which every one of those tracts were mentioned, and it is entirely his own negligence that those tracts were not specifically included in the later deed, for he had the information in his own hands, as given to him at the time that those tracts were to be included in the deed. The court finds as a conclusion of law, however, that, under the language of the conveyance itself, the timber on those tracts, as owned by the Williams & McKeithan Lumber Corporation of Virginia, passed to the D. T. McKeithan Lumber Company, and that company is now entitled to the same, and, being now entitled to the same under the language of the conveyance, it is not entitled to any decree for any alleged deficiency for any failure to receive the same.

[8] This leaves the last question of the deficiency of the timber on the tract known as the 3,088-acre tract. That tract is specifically in terms described in the deed of conveyance, and at the date of conveyance the timber on it is undertaken to be conveyed to the D. T. McKeithan Lumber Company. In the deed of conveyance, however, in the description of this tract of land, it is expressly declared that the trees and timber undertaken to be conveyed by that deed are the same that were conveyed by Armstrong J. Howard to the Williams & McKeithan Lumber Company by deed dated July 29, 1904, and duly recorded in Darlington county in Book 39, p. 685. That deed has been put in evidence (or a certified copy thereof) by the D. T. McKeithan Lumber Company, and the deed from Armstrong J. Howard, as here put in evidence, is expressly made subject to all the rights of Edward W. and Carolina B. Mixer and their heirs and assigns under and by virtue of the deed of S. Marco and I. Lewenthal to them, dated March 19, 1892, and duly recorded in the same county, Book 12, p.

799. The conveyance from Marco and Lewenthal to the Mixers was also put in evidence by the D. T. McKeithan Lumber Company, and that deed undertakes to convey to the Mixers all the timber of whatsoever kind, to have and to hold the same to the Mixers in fee. The deed then proceeds to grant unto the Mixers the right and privilege to enter at their will upon the lands, to move and carry away that timber, and proceeds then with a warranty to the Mixers from Marco and Lewenthal of the timber for the term of 20 years from the date. The D. T. McKeithan Lumber Company's position is that that deed to the Mixers was an absolute deed of transfer and conveyance to them of the timber described therein in fee; that it having been conveyed to them the subsequent conveyance from Howard to the Williams & McKeithan Lumber Company was incapable of transferring any interest, the timber being already vested in the Mixers; and that therefore, when the Williams & McKeithan Lumber Corporation of Virginia undertook to convey to the D. T. McKeithan Lumber Company the timber upon the same tract of land, it could convey nothing more than Armstrong J. Howard conveyed to the Williams & McKeithan Lumber Company, which was, according to their construction, no right to any timber, and that the reference in the deed to the D. T. McKeithan Lumber Company, which is the reference in the description of the timber conveyed to the McKeithan Lumber Company to this deed to Howard, and thereby to the deed of the Mixers as part of the description, cannot be taken as modifying the clear language of the deed in conveying this timber in the conveyance of the 3d of July, 1911, and the warranty by the Williams & McKeithan Lumber Company of South Carolina and the Williams-McKeithan Lumber Corporation of Virginia to the D. T. McKeithan Lumber Company of the same. The general rule of law is that the vendee is charged with notice of all that appears upon the face of the deed to him, or which can be reasonably gathered by reference therefrom. The warranty in the deed of conveyance of the 3d of July, 1911, is to the effect that the vendors warrant all and singular the aforesaid property unto the said D. T. McKeithan Lumber Company, its successors and assigns. The warranting being of so much property by a reference to the description of the property, I hold that, if in the description of a piece of property it be declared that that property, as described, is subject to a mortgage for so much money, the warranty of the said premises would mean a warranty of title subject to that mortgage; that the vendee would be bound to take notice upon the face of his deed of the existence of that mortgage, and the warranty would be construed with reference to the description, and the warranty would go, therefore, only to the extent of the property subject to the mortgage. In this case the difficulty about it is that the description of the timber is positive, qualified only at the end of it by declaring that it was the same as was conveyed by Armstrong J. Howard to the Williams-McKeithan Lumber Corporation. Construing the deed as a whole, the court is of opinion that that was a fair notification to the D. T. McKeithan Lumber Company that what was conveyed was only the timber that was conveyed by Howard,

and, if no timber was conveyed by Howard, they were so informed, and they took only whatever was conveyed, and the warranty extended no further. I am further of the opinion that, under the decisions of the Supreme Court of South Carolina, the deed of conveyance from Marco and Lewenthal to the Mixers, taken as a whole, would be construed to be not an indefinite and perpetual deed of conveyance of the standing timber, but a deed of conveyance of the standing timber subject to its being cut, moved, and carried off within 20 years from the date of the deed. The deed is inartificial, and, under the common-law interpretation of deeds, the warranty would not be effective in derogation of the previous absolute estate conveyed; but as I understand the general result of the decisions of the Supreme Court of South Carolina, upon such deeds as constituting a rule of property, in the construction of such deeds existing in South Carolina the deed of conveyance of standing timber of this kind is to be construed as a whole, and if there is anything upon the face of it which indicates an intention to limit the previous absolute continuous perpetual conveyance of standing timber, as contradistinguished from the conveyance of the land itself, the court will resort to that to determine the extent of the estate conveyed. Interpreting the deed of conveyance in this case from the standpoint of that rule of construction as a rule of property indicated by the Supreme Court of South Carolina, I am of the opinion that the deed of conveyance of this standing timber from Marco and Lewenthal to the Mixers was a conveyance of that property, subject to the condition that it carried only so much as they cut and removed within 20 years from the date of that conveyance, and that all timber thereon not cut and removed within 20 years from that date did not go under that deed, and under the evidence in this case would appear to have passed to the Williams & McKeithan Lumber Company, and is the property of the D. T. McKeithan Lumber Company in this case. I hold, therefore, that no deficiency by reason of that has been established in this case, and the defendants are not entitled to a decree thereunder.

Under the circumstances of this case, the defendant D. T. McKeithan Lumber Company having received affirmative decrees on some of its counterclaims, and no defense set up by the codefendants having been sustained, the costs of this case will be paid as follows: The trustee having come into court and asked for instructions and having brought the defendants in court, as to the questions raised in the bill of the trustee the costs will be paid by the trustee, with the right, under the terms of the mortgage, to deduct the same out of any fund which, under the terms of the mortgage, is applicable to the costs and expenses of the trustee in the performance of his duty. The other costs in the case will be paid, two-fifths by the individual defendants, McKeithan, Bonsal, and Barr, and the other three-fifths by the defendant the D. T. McKeithan Lumber Company. The costs will be taxed by the clerk, and any difference as to the amount thereof to be paid by the respective parties will be settled by the court.

Any party to this cause shall be at liberty to apply at the foot of this decree, upon proper notice, for any further order or decree necessary to carry into effect the principles hereby adjudged.